24CA1388 Peo in Interest of Duran 10-24-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1388
Pueblo County District Court No. 24MH30050
Honorable Timothy O'Shea, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Joseph Louis Duran,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Navarro and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Joseph Louis Duran appeals the district court's order authorizing the involuntary administration of antipsychotic and mood-stabilizing medications.  We affirm.

## I.    Background

¶ 2    Duran was committed to Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed in a criminal case.  He was diagnosed with bipolar disorder and presented as "hyper-verbal, grandiose, persistently irritable, and preoccupied with non-bizarre, persecutory delusional beliefs surrounding his involvement with the legal and medical systems."

¶ 3    At the request of CMHHIP staff psychiatrist Dr. Martin Ahern, the People petitioned the district court to authorize the involuntary administration of (1) Zyprexa, an antipsychotic; (2) Haldol, another antipsychotic; (3) Depakote, a mood stabilizer; and (4) Vistaril, a medication for agitation and anxiety.

¶ 4    The district court held an evidentiary hearing at which Dr. Ahern and Duran testified.  Dr. Ahern explained Duran's bipolar disorder and accompanying symptoms.  And he described the four requested medications, their side effects, and their necessity in treating Duran's symptoms.

1

¶ 5     Duran denied having a mental condition.

¶ 6     Finding that Dr. Ahern testified "credibly and persuasively," the court granted the petition and entered an order authorizing the involuntary administration of the requested medications.

## II.     Legal Principles and Standard of Review

¶ 7     An involuntarily committed person retains the right to refuse treatment.  *See People v. Medina*, 705 P.2d 961, 971 (Colo. 1985). Even so, a court may authorize the involuntary administration of medication if the People prove the following elements by clear and convincing evidence:

> (1) the person is incompetent to effectively participate in the treatment decision;
>
> (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental condition or to prevent the likelihood of the person causing serious harm to himself or others in the institution;
>
> (3) a less intrusive treatment alternative is not available; and
>
> (4) the person's need for treatment is sufficiently compelling to override his bona fide and legitimate interest in refusing treatment.

*Id.* at 973.[1]  We determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the court's order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  A physician's testimony alone may be sufficient to satisfy the *Medina* test.  *Id.* at ¶ 30.

¶ 8     Applying the *Medina* test presents a mixed question of fact and law, meaning we defer to the district court's factual findings if supported by the record but review its legal conclusions de novo.  *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.  It's for the district court, as the fact finder, to determine witness credibility; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.  *Id.*

### III.  Discussion

¶ 9     Duran doesn't contest the district court's findings on the first and third *Medina* elements.  But he contends that the People didn't

---

[1] A different test applies to petitions to administer involuntary medication solely to restore competency.  *Sell v. United States*, 539 U.S. 166, 180-81 (2003).  But the parties don't dispute that *People v. Medina*, 705 P.2d 961 (Colo. 1985), applies here because the purpose of the medications is to prevent a significant and long-term deterioration in Duran's mental condition.  *See Sell*, 539 U.S. at 181-83.

present sufficient evidence to prove the second and fourth *Medina* elements. We disagree.

## A. The Second *Medina* Element

¶ 10 The second *Medina* element may be satisfied by showing either a significant and likely long-term deterioration or the likelihood of serious harm to self or others in the institution. *Medina*, 705 P.2d at 973. The court here found that the recommended treatment is necessary "to prevent a significant and long-term deterioration" in Duran's mental condition (not that Duran was a threat to himself or others).

¶ 11 On this point, the court expressly credited and adopted Dr. Ahern's testimony. Dr. Ahern opined that, without the requested medications, there would be a significant and likely long-term deterioration in Duran's mental condition. He explained that Duran had been given antipsychotic and mood-stabilizing medications on an emergency basis, and during that time, Duran's condition demonstrably improved. In particular, Duran was "more pleasant" and "cooperative," "less paranoid" and "verbose," and "generally in much more control of his behavior." But when the emergency medication period ended, Duran refused to continue taking the

medications voluntarily, and his condition promptly deteriorated. Duran once again became "disruptive, loud, argumentative, [and] provocative to other patients," and he showed "poor impulse control" and "more paranoia" and "mood symptoms." Given the "short window of seeing improvement on medication and prompt deterioration" after stopping medication, Dr. Ahern expected to see "a prolonged impairment in [Duran's] ability to function as a result of not being medicated."

¶ 12     Duran admits that his condition improves while medicated but nevertheless asserts that Dr. Ahern's testimony regarding the "short window" and "prompt deterioration" doesn't support a finding of long-term deterioration as required by *Medina.* In support, Duran points out that he has been hospitalized three times since 1995 but that he went decades between hospitalizations. He says this establishes a "history of maintaining his independence without medication."

¶ 13     But Dr. Ahern opined that, without medication, Duran's "mental state would continue to deteriorate or would remain in this impaired and symptomatic state." And Dr. Ahern explained that bipolar disorder is "a chronic condition that requires maintenance

5

medication" to prevent periods of mania and depression. To the extent Duran asks us to second-guess witness credibility or draw different inferences from the testimony, we won't do that. *See R.C.*, ¶ 7.

¶ 14 Thus, we conclude that sufficient evidence supports the district court's finding that the requested medications are necessary to prevent a significant and likely long-term deterioration in Duran's mental condition.

### B. The Fourth *Medina* Element

¶ 15 In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina,* 705 P.2d at 974.

¶ 16 Duran asserts that the state's interest in treating him is insufficient to overcome his bona fide and legitimate interest in

avoiding severe side effects by refusing treatment. More specifically, he claims Dr. Ahern testified that he exhibited such side effects in the form of tremors and that he has several underlying chronic medical conditions.

¶ 17 We acknowledge Duran's legitimate concern regarding potentially harmful side effects, particularly considering his other medical conditions. But Dr. Ahern testified that Duran didn't report or display "any sort of tremors while taking the medication." Instead, Duran exhibited "an arm tremor and head bobbing after *cessation* of the medications." (Emphasis added.) As a result, Dr. Ahern couldn't say whether these symptoms resulted from the medications or "another medical process."

¶ 18 Beyond that, Dr. Ahern testified that Duran's providers had consulted the medical team, would closely monitor Duran's physical and mental conditions, and would adjust or prescribe medications for any side effects he might experience. And Dr. Ahern explained that (1) the need to treat Duran with the medications outweighed the risk of side effects, even considering his other medical conditions; (2) no alternative treatment would be both as effective and less intrusive than the medications; (3) without the

medications, there would be a significant and likely long-term deterioration in Duran's mental condition; and (4) when given the medications on an emergency basis, his condition improved.

¶ 19     We therefore conclude that sufficient evidence supports the district court's finding that the need to treat Duran's mental condition is sufficiently compelling to override his bona fide and legitimate interest in refusing treatment.

## IV.    Disposition

¶ 20     We affirm the order.

JUDGE NAVARRO and JUDGE GOMEZ concur.